# Thornton & Co. *v.* Savage.

### *Action for Breach of Contract.*

1. *Action on contract; when contract admissible in evidence without proof of execution.*—In an action for breach of contract, when the execution of the contract, which is the foundation of the suit, is not denied by plea verified by affidavit, such contract is admissible in evidence without proof of its execution.

2. *Same; admissibility of evidence.*—In an action seeking to recover damages for the breach of contract in which it was stipulated that the defendant should cut all timber on certain designated lands suitable for railroad cross-ties, and it was agreed that in the event any trees or timber were left which were suitable for making into cross-ties, the defendant was to pay a penalty of a certain sum per tie, witnesses who are experts in respect to what trees are suitable to be made into cross-ties and the num-

[Thornton & Co. v. Savage ]

ber of cross-ties that could be made from standing trees, and who were shown to have made a careful examination of the timber on the land described in said contract, are compet nt to testify what number of cross-ties, in their judgment, could be made from the timber left by the defendant on said land.

3. *Same; same.*—The issue in such case being whether timber embraced in the contract was left standing on the land and, if any, how much, it is competent for the plaintiff to testify as to the character of the trees left standing on the land by the defendant, for the purpose of enabling the jury to determine whether or not the timber was of the character suitable for cross-ties as contemplated by the contract.

4. *Same; same.*—In such a case, persons familiar with the land and the timber thereon are competent to testify, that the timber left standing on the land and not cut by the defendant was as good as that which the defendant cut and made into cross-ties.

5. *Same; same.*—In such a case, the contract sued upon being unconditional and in no wise dependent upon the conformation of the land itself, testimony that the land was broken or that it was level is outside of any issue in the case, and is inadmissible.

6. *Same; same.*—In such a case, where, pending the negotiations which resulted in the making of the contract between the plaintiff and the defendant, a stranger to the contract stated his opinion or estimate as to the number of cross-ties on the land, in the presence of the plaintiff, to which the plaintiff made no response, the plaintiff's silence can not be construed as an admission of the correctness of such estimate on the part of the stranger; and the fact of such estimate having been made can not shed any light on any issue in the case and evidence thereof is inadmissible.

7. *Same; same.*—In such a case it is not competent for the defendant to introduce testimony to show that portions of the ties which had been cut and removed from the land in question were rejected; the rejection of such ties being *res inter alios acta*, so far as the plaintiff's rights are concerned.

8. *Witness; admissibility of evidence for the purpose of impeachment* — Where a witness for one of the parties to a suit, on cross examination, has his attention called to statements made by him in contradiction of his evidence, and he makes no response or explanation thereof, it is competent for the other party to the suit, by way of impeachment, to prove such alleged statements.

9. *Action for breach of contract; charge to the jury* —In an action for the breach of a contract in which the defendant agreed to cut from certain lands owned by the plaintiff, all the timber suitable for making cross-ties, where one of the issues in the case is as to whether the trees which were left standing on said lands by the defendant were of a character suitable for making cross-

ties, charges which instruct the jury that before they can find for the plaintiff they must be reasonably satisfied from the evidence that trees suitable for making cross-ties were left standing on the land, and that said trees were free from sap and other specified defects, are properly refused ; common knowledge and the evidence in the case concurring to show that freedom from sap is not an essential quality of timber suitable for cross-ties.

APPEAL from the Circuit Court of Pike.
Tried before the Hon. J. W. FOSTER.

This action was brought by the appellee, E. C. Savage, against the appellants, H. C. Thornton & Company, and counted upon a contract which is copied in the opinion. The tendencies of the evidence on the part of the plaintiffs and the defendants are sufficiently stated in the opinion.

On the trial of the cause, when the plaintiff offered in evidence the contract sued on, which was signed by the plaintiff and the defendants, the defendants objected to the introduction of said contract upon the ground that the execution thereof had not been proven. The court overruled the objection, and the defendant duly excepted. The plaintiff then read in evidence the depositions of four witnesses who by their testimony showed that they had special knowledge of the premises and were experts in respect to what trees were suitable to be made into cross-ties, and as to the number of cross-ties that could be cut from certain standing trees. The defendants moved to exclude certain portions of the testimony of these several witnesses which are set forth in the opinion. The court overruled the motion, and to each of these rulings the defendants separately excepted.

The plaintiff as a witness in his own behalf testified to the making of the contract sued on, and that the defendants, after cutting 1484 cross-ties under said contract, quit cutting, and that under said contract the lands were inspected for the purpose of determining how many cross-ties the defendants could have cut from the trees thereon. The plaintiff was then asked, as a witness, the following question : "What is the character of the trees left standing on the lands after Thornton quit work there?" The defendants objected to this question, upon

[Thornton & Co. v. Savage.]

the ground that it called for matter which is not mate-
rial and which is incompetent and irrelevant. The court
overruled the objection and the defendants duly ex-
cepted.

After testifying as to the character of said trees, the
plaintiff further testified as follows: "The timber left
standing on the land and not cut by defendants is as
good as that which they had cut and made into ties."
The defendants moved to exclude this portion of the
plaintiff's testimony, upon the ground that it was a
mere expression of the opinion and a comparison be-
tween the timber which had been cut into cross-ties and
the timber which had not been cut, and was immaterial
and irrelevant. The court overruled this motion, allow-
ed said testimony to go to the jury, and to this ruling
the defendants duly excepted.

The defendants introduced in evidence the depositions
of the witness N. J. Scott. One of the questions pro-
pounded to the witness Scott in the interrogatories was
as follows: "State whether or not it is a fact that after
the cutting of the timber ceased you and D. C. Savage
went out to count the ties that had been cut, and while
so occupied upon the land counting the ties D. C. Savage
called your attention to several patches of timber upon
the land which had not been cut into cross-ties? And
did you not say to him that there was timber left on the
land not cut that would make cross-ties, but that you
could not get the negroes to cut it?" This witness an-
swered this interrogatory by stating that after cutting
the timber he went with D. C. Savage to count the trees
which had been cut, and while so occupied D. C. Sav-
age called his attention to some timber on the land
which had not been cut into cross-ties, but he further
testified that said timber was not suitable for cross-ties,
and he so told Savage. And in answer to the same in-
terrogatory, he testified that Savage said there were
plenty of men who would work and mentioned one
Scroggins; and that thereupon he, the witness, offered
Scroggins one cent per tie more than defendants were
paying for cutting, which offer the witness Scroggins
declined to accept. The plaintiff moved to strike from
this answer of the witness Savage that part thereof in

[Thornton & Co. v. Savage.]

which he testified that he offered to employ Scroggins for the purpose of cutting ties, &c., upon the ground that such testimony was illegal, irrelevant and immaterial, and that it was not responsive to the interrogatories propounded. The court granted this motion, and to this ruling the defendants duly excepted.

One Charles Massey, a witness for the defendants testified that he knew the land in question, and was thereupon asked the following question: "How is the land situated? Is it broken or level?" The plaintiff objected to this question upon the ground that it called for matter which was immaterial and irrelevant. The court sustained this objection and the defendant duly excepted. The defendants then asked this witness the following question: "Did you hear Wilson make an estimate as to the number of ties, before the contract was made, in the presence of Mr. Savage?" The plaintiff objected to this question, upon the ground that it called for irrelevant and immaterial evidence, which objection the court sustained, and the defendants duly excepted.

Upon the examination of the defendant Thornton as a witness, he testified that when he ceased to get the timber from the plaintiff's lands there was no timber left thereon suitable for cross-ties. The defendants then asked said witness the following question: "What ratio of cross-ties that you cut from the land in question was rejected?" The plaintiff objected to this question, because it called for evidence which was incomptent to the issues in the case and was irrelevant and immaterial. The court sustained the objection, and the defendants duly excepted.

Upon the examination of the plaintiff in rebuttal, he was asked the following question: "Did not you and N. J. Scott, after the cutting of the timber had ceased, go on the land to count the ties that had been cut, and while there did you not call the attention of said Scott to several bodies of timber on the land which had not been cut into cross ties, and did he not say to you that there was timber left on the land uncut that would make cross ties, but that he could not get the damn negroes to cut it, and that they then moved to another belt of timber?" The defendants objected to this question, because it called for irrelevant and immaterial evidence and was

[Thornton & Co. v. Savage.]

an effort on the part of the plaintiff to make testimony for himself by proof of conduct and declarations when defendant was not present. The court overruled this objection, and the defendant duly excepted, Upon the witness answering the question in the' affirmative, the defendants moved to exclude the answer upon the same grounds assigned in support of the objection to the questions. The court overruled this motion, and the defendants duly excepted.

Upon the introduction of all the evidence the defendants requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The jury must be reasonably satisfied from the evidence that trees suitable for cross-ties were left on the land, free from twist, dote, punk knots, rot, sap or red heart, before they can find for the plaintiff, and the burden of satisfying you of this is on the plaintiff." (2.) "If from the evidence the jury are not reasonably satisfied from the evidence that trees, suitable for making cross-ties were left on the land, free from twist, dote, punk knots, rot, sap or red heart, then they should find for the defendant, and the burden of satisfying them is on the plaintiff."

There were verdict and judgment for the plaintiff. The defendants appeal and assign as error the several rulings of the trial court to which exceptions were reserved.

HUBBARD & HUBBARD, for appellant, cited *M.* & *W. R. R. Co. v. Varner*, 19 Ala. 185; *Ala. & Fla. R. R. Co. v. Burkett*, 42 Ala. 83; *Chandler v. Bush*, 84 Ala. 102.

WORTHY, FOSTER & CARROLL, *contra.*—The objection of the appellants to the introduction of the contract will hardly be insisted upon as error, the contract being the foundation of the suit, as shown by the complaint, and there being no plea of *non est factum.*—Code of 1896, § 1801.

There was no error on the part of the court in refusing to exclude the testimony of the witness as to how many cross-ties could be made from the trees left standing upon the land involved in this suit.—1 Greenleaf on Evidence, § 440; *Campbell v. State*, 23 Ala. 44.

The testimony of the witness that the timber left standing on the land and not cut by the defendant was as good as that which the defendant had cut and made into cross-ties, was inapplicable and properly excluded. *McCalman v. State*, 96 Ala. 98 ; *Billingsley v. State*, 96 Ala. 126 ; *Liverpool &c. Co. v. Tillis*, 110 Ala. 201 ; *A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45 ; *Raisler v. Springer*, 38 Ala. 793 ; *S. & N. Ala. R. R. Co. v. McLendon*, 63 Ala. 266.

The silence of the plaintiff when Wilson, a stranger to the contract, made the estimate as to the number of ties that could be cut from the timber on the land, can not be considered as an admission of the correctness of such estimate.—*Roberts v. State*, 68 Ala. 515 ; *Tolbert v. State*, 87 Ala. 27 ; *Snodgrass v. Caldwell*, 90 Ala. 320.

McCLELLAN, C. J.—This action is prosecuted by Savage on a written contract entered into by him and H. C. Thornton & Co. on April 23, 1897, which is in the following words : "This agreement made and entered into, this the 23rd day of April, 1897, by and between D. C. Savage, of the first part, and H. C. Thornton & Co. of the second part, and witnesseth, that the first party for and in consideration of five cents per tie has sold to the second party all the timber on the N. ½ of S. W. ¼ and N. ½ of S. W. ¼ of S. W. ¼ section 10 T. 21, R. 11, in Chilton County, Ala., suitable for making cross-ties, and the second party agrees and binds himself to make into cross-ties every tree on said land which can be used for said purpose of making cross-ties, and not pick and cull out the best of said timbers and leave such as might be classed undesirable or hard to work into ties, and the second party agrees to cut and remove said timbers within 120 days from said land, and pay for the same at five cents per tie, as above, every fifteen days, beginning on the 13th day of May, 1897, and to have all paid for by the time the cutting and making of ties is completed, and the party of the first part, and the party of the second part, reserves the right to employ a man and they to select a third, all of whose judgment are known to be good on timbers suitable for making cross-ties, to look over said land from time to time, and see if any trees or timbers are left which are suitable for making into cross-ties, and in case such is found, the second party is to

pay a penalty of five cents per tie, for whatever such trees or timbers would amount to if made into cross-ties.''

This contract being the foundation of the suit and its execution not being denied by plea verified by affidavit, was, of course, admissible in evidence without proof of execution.—Code, § 1801.

On the trial it was shown that defendants set about cutting and removing cross-ties from the land and continued therein until they had taken fourteen hundred ties, when they ceased work under the contract, claiming that they had cut all the timber from the land that came within its terms. Plaintiff's insistence is, that defendants left a large amount of such timber on the land uncut for which he is entitled to be paid at the contract rate ; and this is the issue in the case : Whether timber embraced in the contract was left standing on the land, and, if any, how much. On this issue plaintiff took the depositions of four witnesses shown to have special knowledge in the premises and to be experts in respect to what trees were suitable to be made into cross-ties and the number of cross-ties in given standing trees, etc., etc. Two of these witnesses said they had given the land and the timber left by defendants upon it a careful general examination with a view to estimating the number of ties in said timber, and that in their judgment "the timber left on the land would make 6,000 cross-ties." The other two of these witnesses examined the land and timber together. They counted the trees left on the land by defendants, which in their judgment were within the terms of the contract, and calculated the number of ties in each tree ; and they each testified that "the number of cross-ties in the trees remaining on said land would be 6,291." The defendants moved to exclude the testimony quoted of these several witnesses, and excepted to the court's action in overruling their motions. These exceptions are without merit. The witnesses were clearly competent to give their estimates, based upon such inspection as they are shown to have made, of the number of ties in the timber covered by the contract remaining on the land. And from the context of the evidence in which

these several statements occur, it is manifest that by them the witnesses meant that in the timber left on the land *suitable for cross-ties* there were the number of ties stated by them respectively. Moreover, by the terms of the contract every tree which *could be used for the purpose of making cross-ties was timber suitable for cross-ties;* and this testimony that the timber would make a certain number of ties is no more nor less than to say that the trees referred to could be used for that purpose, and hence were suitable for cross-ties.

We are unable to see any ground of objection to the testimony of the witness Savage as to the character of the trees left on the land after defendants quit work. That was indeed the issue in the case—whether the trees were of a character suitable for cross-ties—and to its elucidation it was certainly proper that the characteristics of the trees so left should be shown to the jury.

Nor do we think the court erred in allowing the witness to testify, in the connection just stated, that "the timber left standing on the land and not cut by defendant is as good as that which he had cut and made into ties." The witness was familiar with the timber, that which had been cut as well as that which remained. He was competent to make the comparison stated in his testimony. And the fact that like timber had been made into cross-ties by defendants was evidence that the remainder could be used for that purpose and was "suitable for cross-ties."

Defendants undertook to cut *all* the timber on the land suitable for cross-ties. This undertaking was absolute and unconditional. It was in nowise dependent upon the conformation of the land itself; and hence testimony that the land was broken or that it was level was outside of any issue in the case, and was properly excluded.

The fact that one Wilson, a stranger to the transactions involved in this suit, in the presence of the plaintiff before this contract was entered into, stated his opinion, or estimate as to the number of ties in the timber on the land, could not have shed any legitimate light on any issue in the case. Plaintiff was under no obligation to take issue with him on the penalty of having his silence construed as an admission; and besides

it is not made, nor proposed to be made to appear what the estimate was, nor whether plaintiff dissented from it.

The court properly excluded the testimony offered by the defendants to show what proportion of the ties which they did cut and remove from the land "were rejected." The rejection referred to, we suppose, was that of some third party to whom defendants sold the ties. It was *res inter alios acta,* so far as plaintiff's rights are concerned. And, if this were not so, it is inconceivable that the fact that defendants had cut defective ties from the land could have any bearing upon the inquiry as to how much timber suitable for ties remained.

The testimony of the witness Savage when called in rebuttal as to calling Scott's attention to several bodies of timber remaining on the land after defendants had ceased cutting ties and as to his, Scott's, admitting that there was suitable timber left, and giving an immaterial excuse for not having cut it, was unobjectionable. Scott was the agent of defendants in and about cutting the timber in question. He had testified as a witness for them, and his testimony was not in consonance with his statement as testified to by Savage. And he had been asked in a cross-interrogatory, to which there was no objection, whether he had not made this statement under the circumstances and in response to Savage's calling his attention to bodies of uncut timber testified to by Savage. To this interrogatory he made no answer. Having thus had his attention drawn to this conversation and his statement made in it which was at war with his testimony in the cause, it was entirely competent for the plaintiff by way of impeachment of Scott's testimony, to prove the whole of that conversation. And it is an error to suppose that the fact that Savage called Scott's attention to uncut bodies of timber was intended as original evidence that there was such timber. It was merely inducement to Scott's statement made in response, and necessary to be shown as a part of the conversation in which the conflicting statement of Scott was made.

It suffices to justify the exclusion of Scott's testimony as to the offer he made Scroggins to cut ties, that it is not responsive to the interrogatory under which the statement was made.

Common knowledge and the evidence in this case concur to show that freedom from sap is not an essential quality of timber suitable for cross-ties. The two charges refused to defendants were faulty in declaring the contrary, if not also in other respects.

We find no error in the record, and the judgment must be affirmed.

Affirmed.