# Alabama Terminal & Inprovement Co. v. Hall & Farley, Trustee, et al. and Hall & Farley, et al., v. Alabama Terminal & Improvement Co.

*Bill by Creditors to Reach Unpaid Stock Subscription.*

(Decedid July 2, 1907. 44 South. 592.)

1. *Equity; Bill; Amendment.*—Under our statute of amendments a bill may be amended as of right before final decree, subject only to the limitations that the amendment shall not entirely change the parties or the cause of action; but new matter and new parties necessary to a complete determination of the controversy may be introduced, entitling the complainant to additional or different relief to that specially prayed when not repugnant to the prayer of the original bill.

2. *Same.*—In determining whether an amendment constitutes a departure, it is not a material inquiry whether the original bill contained equity.

3. *Same.*—The original bill averred that the president of the corporation, without authority, agreed with the defendant subscribers

that they should pay their stock subscription to the capital stock, and that he would thereupon purchase said stock for the corporation and pay for the same with its assets, and that this was done, and as a result thereof such shareholders had never paid their subscription. Upon demurrers being sustained thereto the bill was amended by omitting the allegation that the president's acts were unauthorized and charging that the management of the corporation affairs was left to such president and that the corporation had ratified his acts; the bill also contained a special prayer for an accounting by defendant for the assets of the corporation. Held, the amended bill sought the same purpose as the original bill—the enforcement of the stockholders subscription obligation—and was not a departure.

4. *Same; Bill; Prayer; General Relief.*—Where one is not entitled in equity to the relief specifically prayed, he may, under a general prayer for relief, obtain any specific relief consistent with the case made by the bill.

5. *Same; Amendment; Addition of Parties.*—An amendment to a bill filed by the beneficial owners of a judgment which they were attempting to have paid out of the liabilities of the respondents, making the holder of the legal title to the judgment a party complainant, was the mere addition of an indispensable party complainant, and did not work an entire change of parties.

6. *Same; Pleading; Amendment of Bill; Departure.*—Where the original bill alleged that the respondents were subscribers to the stock of the corporation, and had given their notes to the corporation for their subscription, which notes had never been paid, and that they were parties to a fraudulent scheme with one S. to defraud the corporation and its creditors by an attempt to relieve themselves from their liability on their note, but the allegations of which failed to connect the corporation with the scheme; and the bill was afterwards amended so as to charge that the debtor corporation was a party to the fraudulent scheme, and in effect made a gift of the notes to the subscribers, and that said notes had been assigned to the complainant as collateral security by the corporation, and that complainants had been dispossessed of these collaterals by fraud, such an amendment was not objectionable as a departure.

7. *Corporations; Misuse of Assets; Stock Subscription; Creditor's Rights.*—The purchase by the corporation with its assets of stockholder's subscription liabilities is fraudulent and void as against creditors, whether existing or subsequent, in the absence of notice on part of the latter that the corporation had suffered an impairment of its assets by giving up such subscription.

APPEAL from Montgomery Chancery Court.

Heard before Hon. W. L. PARKS.

Bill by J. L. Hall and another, as trustees, etc., and others, against the Alabama Terminal & Improvement Company and others. From a decree overruling a demurrer to the bill, defendants appeal; and from a decree

dismissing an amended bill as to defendants O. C. Wiley and others, complainants prosecuted a cross appeal. Affirmed on defendants' appeal, and reversed and remanded on complainants' cross-appeal.

R. L. HARMON, A. A. WILEY, and W. S. THORINGTON, for appellant.—The original bill was filed March 17, 1894, and had for its sole purpose the condemnation and collection of defendants the amounts alleged to be due and unpaid on their subscription notes to the capital stock of the A. T. & I. Co., and the balance due and unpaid on said notes was the only thing within the lis pendens prior to the filing of the amendment of Oct. 22, 1902. The amendment allowed July 22, 1897, did not give equity to the bill nor bring within the lis pendens of the suit anything except the balance due and unpaid on the stock.—*Henderson, et al. v. Hall, et al.,* 134 Ala. 489, and there was nothing in the original bill nor in the 1st amendment which could be construed as bringing the case within the purview of either section 2156 or section 818, Code 1896.—*Henderson v. Hall, supra; Hall & Farley v. A. T. & I. Co.,* 143 Ala. 454. The last amendment constituted a departure.—Stephens on Pleading, 410; *Nelson v. First Nat. Bank,* 136 Ala. 591; *Trust v. Miller,* 116 Ala. 494; *Force v. Age-Herald Co.,* 136 Ala. 271; *Moog v. Talcot.* 72 Ala. 210; *Lehman v. Meyer,* 67 Ala. 396: *Mobile Sav. Bank v. Burke,* 94 Ala. 125; *Park v. Lyde,* 90 Ala. 246; *Caldwell v. King,* 76 Ala. 149. The amendment could not have been joined in the alternative in the original bill; and where a bill is filed in a double aspect or in the alternative, each alternative aspect of the bill must present within itself a cause of action containing equity and free from demurrer.—*Lucas v. Oliver,* 34 Ala. 626; *Parke v. Lyde, supra; Caldwell v. King, supra; Ray*

*v. Womble,* 56 Ala. 32. The cause of action as made by the last amendment was barred by the statute of limitations of six years as is apparent from the face of the bill. —*Langford v. Scott,* 51 Ala. 557; *Mayhan v. Smitherman,* 71 Ala. 565; *King v. Avery,* 37 Ala. 169; *Crawford v. Kirksey,* 55 Ala. 302; *Winston v. Mitchell,* 93 Ala. 554; *A. & A. R. Co. v. Ledbetter,* 92 Ala. 326. Demurrer was the proper way to raise the question of the departure and of the statute of limitations.—*Bell v. Montgomery L. Co.,* and authorities next above. Counsel devote considerable time to the discussion of the pleas of res adjudicata, but as the opinion holds that this question is not presented by the record it is unnecessary to brief it.

HORACE STRINGFELLOW, and GUNTER & GUNTER, for appellees.—Whether the original bill contained equity is not a material inquiry.—*Prickett v. Maddox,* 75 Ala. 815. The amendment last allowed did not constitute a departure from the original bill.—*Winston v. Mitchell,* 93 Ala. 565; *Hall & Farley v. Henderson,* 114 Ala. 601; s. c. 126 Ala. 449. The amendment was within the lis pendens and related back to the filing of the original bill.—*Steiner Bros. v. First Nat. Bank,* 115 Ala. 387; *Nelson v. First Nat. Bank,* 139 Ala. 578; *Berney Nat. Bank v. Guyton & Co.,* 111 Ala. 491; *Elyton Land Co. v. Denny,* 108 Ala. 556; *McDonald v. Finch.* The transaction alleged in the bill was a fraud on existing and subsequent creditors.—*Seales v. Robinson,* 75 Ala. 363; *Thompkins v. Nichols,* 53 Ala. 179; *Yeend v. Weeks,* 104 Ala. 351.

TYSON, C. J.—The bill in this cause, as originally filed, averred that Woolfolk, as president of the debtor corporation, without authority, agreed with the share-

holders that they should pay their stock subscriptions to the capital stock of the debtor corporation, and that he would thereupon purchase their stock for the corporation, and pay for the same with its assets, which was done. It was also averred that by reason of such agreement and purchase of the stock the appellants as shareholders had never paid their subscription obligations. In other words, the averments of the bill, in substance and legal effect, showed that the appellants had obtained from Woolfolk as president without any authorization from his corporation, their subscription obligations and bonds belonging to the corporation, without any consideration being paid for them. In short, they were the recipients of a gift from Woolfolk of their obligations and bonds, which were assets of the corporation, which was, of course, a fraud upon the debtor corporation and complainants, its creditor. The bill prayed specially that the appellants be required to pay their subscription obligations, and also contained a prayer for general relief. Upon appeal to this court it was held that the bill was without equity, for the reason that the complainants had an adequate remedy at law by garnishment, and this upon the proposition that the corporation was not bound by the acts of Woolfolk which were averred to be unauthorized; it not being shown that the corporation had ratified his acts, or had otherwise estopped itself to treat his unauthorized action as a nullity, and, therefore, could institute and maintain actions at law upon the subscription obligations which had been illegally and inefficaciously canceled and surrendered to the appellants as makers.—*Henderson v. Hall*, 134 Ala. 455, 494, 32 South. 840, 63 L. R. A. 673.

Upon a remandment of the cause the bill was amended by omitting the averment that Woolfolk's acts were unauthorized, and averring in lieu thereof that the manage-

ment of the affairs of the corporation was left to Wool-
folk as president, and facts showing a ratification by the
corporation of his acts, thus committing it to the fraud
originally alleged against the complainants, and also by
adding a special prayer "that the said several defend-
ants be required to account for and be charged with all
the said assets of the said Alabama Terminal & Improve-
ment Company for which they were justly liable." Again
the equity of the bill was challenged, and upon appeal to
this court it was held that it contained equity. It was
there said: "The purchase by a corporation of shares of
its own capital stock is a fraud upon its creditors. Such
shares neither import nor represent any right or claim
in or to, or to subject to their payment, the assets of the
corporation as against the rights of creditors. Shares
purchased by the corporation have no value as assets for
the payment of corporate debts. Obviously, therefore,
the transaction involves, on the one hand, the diversion
of corporate assets to persons—shareholders—who have
no debt against the company, nor the shadow of claim to
or against its assets, so far as creditors are concerned,
and, on the other, the acquisition by the company, in the
stead of assets thus diverted, of a mere right to reissue
certain shares, or shares to a certain amount in its cap-
ital, which right is of no value as assets for creditors.
Such a diversion of corporate property is, in respect of
creditors, essentially a gift to the shareholders whose
shares are purchased by the company, a purely volun-
tary transfer of corporate assets in fraud of corporate
creditors, fraudulent and void as to creditors, and this
regardless of the intention actuating the company and
the selling shareholders.—2 Morawetz on Corporations,
§§ 789, 790, 793, 794: 2 Thompson on Corporations, §
2054 et seq.; *Hall & Farley, Trustees v. Henderson.* 126

[Alabama Terminal & Improvement Co. v. Hall & Farley, Trustee, et al. and Hall & Farley, et al. v. Alabama Terminal & Improv't Co.]

Ala. 449, 480-482. 28 South. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53, and authorities there cited. Money is leviable property (*Barnett v. Bass, et al.,* 10 Ala. 951; 1 Freeman on Executions, § 111), and money paid by a debtor corporation for shares of its own stock is property fraudulently transferred, which may be reached and subjected by the creditor on bill in chancery. Investment bonds of one corporation owned by a debtor corporation are choses in action leviable by process of garnishment. Their transfer in payment for shares of stock of its own capital by the debtor corporation is a fraud on creditors of the corporation, and a creditor may proceed by bill in equity to set aside such transfer and subject them to his debt. Promissory notes, and other forms of obligation of the subscriber to the capital stock of a corporation for the amount of his subscription, which must be also for the face amount of the stock subscribed for and unpaid, are choses in action which under the garnishment statutes, are subjectable to the debts of the corporation. The forgiveness of them—that is, the surrender of them, canceled as paid, to the maker, when they have not been paid—is, as to creditors, a fraudulent transfer of them, upon which the creditors may come into equity by bill against the maker to coerce their payment upon the complainant's debts. So, too, of course, where the obligor makes only colorable payment, as by the satisfaction of an undoubtedly illegal claim he assumes to hold against the company, or of a claim he has against a third person or another corporation, for which the obligee corporation is not liable. And where the solvent maker actually pays in part and is forgiven as to the residue, or as to the residue is allowed credit by the satisfaction of such illegal claim or claims against another corporation or person, he may

in like manner be required to pay such residue to creditors of the corporation.—*Hall & Farley v. Alabama Imp. Co.,* 143 Ala. 464, 39 South. 285.

Upon the cause being again remanded, the appellants demurred to the bill as amended; and from the decree overruling the demurrer this appeal is prosecuted.

One of the points raised by the demurrer, insisted on by appellants' counsel, is that the amendment was a departure from the original bill, introducing a new cause of action, and therefore barred by the statute of limitations when made. "The statute of amendments to bills is broad and liberal, extending to striking out or adding new parties, or to meet any state of evidence which will authorize relief. Before final decree, the amendment of the bill is a matter of right. The limitations upon its exercise are that it shall not operate an entire change of parties, nor make a new case, nor work a radical departure from the cause of action stated in the original bill. New matter or new claims may be introduced, entitling complainant to additional or different relief from that specially prayed in the original bill, if it is not repugnant to the prayer and purpose. Whether the original bill contained equity—whether it presented a case of which the court could take cognizance, entitling complainant to relief—is not a material inquiry. If it did not, supplying or correcting its deficiencies was the proper office of an amendment.— *Prickett v. Sibert,* 75 Ala. 315; *Seals v. Pheiffer,* 81 Ala. 518, 1 South. 267."—*Fite v. Kennamer,* 90 Ala. 470, 473, 7 South. 920.

In *Ingraham v. Foster,* 31 Ala. 132, it is said: "To make an amendment improper, it is not enough that there be a mere inconsistency or repugnancy of allegation. There must be an inconsistency or repugnancy of

the purposes of the bill, as contradistinguished from a modification of the relief." See, also, *Blackwell v. Blackwell*, 33 Ala. 57-63, 70 Am. Dec. 556; *Cain v. Gimon*, 36 Ala. 168; *Moore v. Alvis*, 54 Ala. 356. In the case last cited the original bill sought to enforce a vendor's lien on a certain tract of land. It alleged that complainant sold the land to the respondent, taking his promissory note therefor, which recited that it was given for the lands described in the bill; that he (complainant) gave his bond, conditioned to make title upon payment of the purchase money; that respondent went into possession of the land under the purchase, and so continued; and that the purchase money was due and unpaid, etc. The respondent, in his answer, denied that the note was given for the purchase money of the land, or that he had bought it (the land) from complainant. He stated the transaction to be this: That he was indebted to the complainant for borrowed money, and that complainant proposed that, if he make him an absolute deed to the lands to secure the debt, he (complainant) would give him an extension of the debt, and would execute bond for title to convey the land to him (respondent) when the amount of the note was paid in full; that in pursuance of this agreement the note was executed. The amendment to the bill adopted the transaction as stated in the answer of the respondent, and sought to have the deed declared a mortgage and lien upon the lands for the payment of the note. It was objected by demurrer that the amendment was a departure from the case made by the original bill, and made a new case. The chancellor so held. But this court, speaking through Stone, J., held otherwise, and reversed the decree appealed from.

In *Collins v. Stix,* 96 Ala. 340, 11 South. 380, it is said: "It has been recognized, since the statute (of amendment) was first considered by the court, that it is no objection to an amendment that it asserts new matters or claims varying the forms of the defendant's liability growing out of the same transaction, or varies the description of the transaction, or enlarges the degree of relief sought against the original defendant, or brings in new parties chargeable with liability in reference to the same matter. * * * An amendment is regarded as making a new and different case when it changes the right and character in which the complaint sues, or varies substantially the kind of relief prayed. * * * But an amendment cannot be regarded as involving a substitution of an entirely new case, or radical departure from the case made by the original bill, when it goes no further than to add new parties defendant, to allege that they were participants with the original defendants in the act or transaction which furnished the cause of complaint as first made against the latter, and to pray for substantially the same kind of relief against all the defendants. Such an amendment merely enlarges the scope of the same suit as to subject-matter and parties. This is the nature of the amendment which was allowed in the present case. The subject-matter of the suit (the fraudulent disposition of the debtors' property) and the relief sought (the vacation of the fraudulent transaction and the enforcement of the payment of the complainant's demands out of the property or the proceeds of its sale in the hands of the fraudulent transferees) continued the same, and the same defenses are applicable.—*Johnson v. Durner,* 88 Ala. 580, 7 South. 245. The amendment merely made the suit cover the whole of the transaction, instead of only the part of it

which was embraced by the original bill." In that case the purpose of the original bill was to subject to complainant's debt certain real estate alleged to have been fraudulently conveyed by his debtors to one Collins. It also alleged that on the same day that the real estate was conveyed the debtors sold and disposed of their stock of goods to other parties. But the purchasers of the goods were not made parties. Of course, no relief could have been had under it as to the goods. By the amendment the purchasers were made parties, appropriate averments were made to show the invalidity of that transaction, and the special prayer of the bill was so enlarged as to ask relief against the sale of the goods. It was in response to a demurrer to the bill as amended, upon the ground that the amendment introduced a new and independent cause of action, that the court was speaking when it used the language we have quoted above.

In *Winston v. Mitchell*, 87 Ala. 395, 5 South. 741, it was held that the bill sought to establish a resulting trust in lands, and that the complainant's evidence established a constructive trust, and therefore that no relief could be had upon it. The cause was remanded in order that complainant might amend the bill to meet the evidence. The amendment was made so as to charge the respondent as a trustee in invitum and to enforce a constructive trust in conformity with the proof.' A demurrer was interposed, assigning as grounds that the amendment made a new case and was barred by the statute of limitations of six years. On appeal this court held that the amendment was proper.—93 Ala. 554, 9 South. 551. It said, among other things: "Notwithstanding the variation of the allegations, the subject-matter of the amended and original bill is the same. the cause of action is unchanged, the same character of relief is ap-

propriate to the facts stated in both, differing only in extent, and the same defenses are applicable."

In *Adams v. Phillips,* 75 Ala. 463, after stating the limitation upon the right of amendment allowed by the statute, it was said: "Within this limitation the right to amend is coextensive with the errors, omissions, defects, or imperfections existing in the original bill, which, if not cured, would prevent complainant from obtaining relief to which he may be entitled. * * * An amended bill, asserting the same title, seeking the same relief, correcting only an erroneous statement of the cause of action in the original bill, or supplying a defective statement, is not to be regarded as introductive of new matter or a new claim."

In *Jones v. Reese,* 65 Ala. 134, it was held that, although plaintiff's title to relief cannot be changed by amendment, it is permissible to change the averments of the bill as to the defendant's title to the property sought to be subjected. It was held in *Milner v. Stanford,* 102 Ala. 277, 14 South. 644, that "a bill to enforce the specific performance of a contract may be amended so as to make it a bill to enforce a resulting trust; the relief being the same."

The cases above cited and quoted were in equity. We shall now note a few of the cases at law, where the statute of amendment is analogous.

In *Simpson v. M. & C. R. R. Co.,* 66 Ala. 85, the complaint claimed damages for the killing of plaintiff's mule, and was framed under the act of February 3, 1877, imposing upon railroad companies an absolute liability for injuries to stock from their trains, alleging no act of culpability on the part of the defendant, its agents, or servants. It failed to state a cause of action, for the reason that the statute was unconstitutional. The

18 R

[Alabama Terminal & Improvement Co. v. Hall & Farley, Trustee, et al. and Hall & Farley, et al. v. Alabama Terminal & Improv't Co.]

plaintiff amended his complaint by alleging the negligent injury of his animal. This court held that the amendment did not introduce a new cause of action, and was, therefore, proper.

In *L. & N. R. R. Co. v. Woods,* 105 Ala. 561, 17 South. 41, the action was by a brakeman in the service of defendant, and sought a recovery for injury to him, caused by the negligence of the defendant's servants or employes, who were his fellow servants, in failing to apply the brakes upon the cars and check the motion of the train to a speed of safety, etc. The amendment averred the injury, the same facts as to the employment of plaintiff, and that the injury arose from the negligence of the engineer, who had charge of the engine, in permitting the train to attain a great rate of speed, etc. More than a year had elapsed between the time the cause of action arose and the making of the amendment. The motion to strike the amendment was based upon an alleged departure. This court held that, notwithstanding the original complaint did not show any liability, yet the matter alleged in the amendment was within the lis pendens of the original, and therefore related back to the commencement of suit. On a second appeal this ruling was adhered to and reaffirmed.—Id., 115 Ala. 527, 22 South. 33.

In *Central of Georgia Railway Co. v. Foshee,* 125 Ala. 223, 225, 27 South. 1006, after a review of many of our cases at law, the conclusion reached is set down in this language: "These authorities serve to fully support the proposition with which we began this discussion, viz., that, so long as counts added by amendment set up the same general transactions or occurrences upon which the original complaint relied for recovery, they do not introduce an entirely new cause of action and are not

objectionable, though the form of action may be changed by them as from trover to case, or vice versa, or from case to trespass, etc., and they further serve to differentiate the rule of amendments prescribed by the statute as construed by this court, from the rule against departure in after-pleading from the case made by the complaint. It is no objection to an amendment that it works a departure from the original complaint within the meaning of the rule last referred to. The amendments under consideration in most of the cases referred to would have been vicious departures in pleading if the facts they introduced had been replied to a plea to the original complaint, as, for instance, where the original complaint was upon a note, and to a plea of non est factum the plaintiff had replied an assumpsit for work and labor, there would have been a clear departure from the original complaint, but it is undoubtedly the law that such assumpsit may be added by amendment to the complaint in a separate count. And so it is no argument, against the right to add to a count for negligence counts for willfulness or wantonness, that willfulness or wantonness could not be replied to a plea of contriutory negligence to a complaint charging negligence only."

It must be conceded that what is here said with respect to departure in after-pleading not being the proper test to determine whether an amendment is a radical departure or introduces a new cause of action is directly opposed to what was said in *Nelson v. First National Bank*, 139 Ala. 590, 36 South. 707, 101 Am. St. Rep. 52, although this case is quoted from and cited approvingly. The writer is of the opinion that the *Foshee Case* states the law correctly, and that there is said in the *Nelson Case*, much that is opposed to many of our former adjudications. What is said in the *Nelson Case* with respect

to the departure in after-pleading, the inhibition against the introduction of a new claim, growing out of the same transaction, by amendment, and the statute permitting amendments which do not relate back to the commencement of the suit, to which the statute of limitations may be pleaded, is in my judgment unsound and should not be followed. If the amendment introduces a new cause of action, its allowance is wholly unwarranted, irrespective of when made. If it does not, then its allowance is matter of right, and, no matter when made, it relates back to the commencement of the suit. In other words, if the amendment makes a new case, it is not allowable, without regard to the period of time elapsing between its making and when the cause of action, as alleged in the original complaint, arose. If it does not, then it is allowable, no matter how great a period of time may have intervened between its making and that when the cause of action first alleged arose. In every case where the amendment is of the subject-matter, the question always is: Does the amendment introduce a new cause of action? To state the question in another form: Is the subject-matter of the amendment within the lis pendens of the original complaint or bill? If it is, the amendment must be allowed at any stage of the proceeding. If not, it should be rejected, because it introduces a new cause of action; and this without regard to the statute of limitations. In fact, the question as to whether the matter alleged in the amendment is barred by the statute of limitations is not the test by which its allowance is to be determined; but, as we have stated, the question is: Does the amendment introduce a new cause of action? Does it count upon a new and different transaction from that counted on originally? Of course, if the amendment counts upon a different transaction, and

therefore introduces a new cause of action, it does not relate back to the commencement of the suit, and, if made after the statute of limitations has barred it, the defense of the statute of limitations would be available. But, where this defense is resorted to, in order to determine its availability, we must hark back to the question as to whether the amendment introduced a new cause of action—whether it counts upon the same general transaction or occurrence originally counted on.—*Mahan v. Smitherman,* 71 Ala. 56;; *Insurance Co. v. De Jarnette,* 111 Ala. 257, 19 South. 995, and cases there cited. But, whether the reasoning in the *Nelson Case* is sound or not, it can have no possible influence in the determination of the question here presented for consideration, as we will show.

Confessedly, many of the quotations indulged in by us are not directly apposite to the case in hand, but serve to illustrate the liberality of the statute of amendment as construed by this court, and indirectly support the conclusion which we will set down below. The amendment here seeks to enforce the same liability against the appellants that was sought (it may be ineffectually) to be enforced by the original bill, viz., their subscription obligations to the debtor company for its stock and for the bonds illegally obtained by them. It is true that the original bill showed the company could enforce the liabilities upon the subscription obligations, because there had been no legal payment or discharge of them; and the amended bill shows that, as between the apellant stockholders and the company, there had been a discharge from all liability upon those obligations. But under either aspect, as against the complaining creditor, there had been no payment—no discharge. Under the original bill the appellants were liable for their subscrip-

tions, which could have been subjected by garnishment—not because they were indebted to the complainants, but by reason of their indebtedness to the complainants' debtor, the company. So under the amendment, the payment or discharge being illegal as against the complainants, though valid between them and the company, they are still liable upon the theory that they have never made an efficacious payment, nor obtained a valid and legal discharge of their indebtedness to the company. Under neither the original nor the amended bill were the appellants liable by virtue of any contract, express or implied, between them and the complainants; but their liability to the complainants is predicated, whether under the original or the amended bill, upon the proposition that they have neved paid or discharged their obligations; that their obligations had been forgiven without consideration. It is therefore clear that the amendment introduced no new claim, but simply stated the whole of the transaction, instead of only a part of it, which was embraced in the original bill. The subject is the same, the purpose is the same, the relief sought is the same, and the defenses are the same. Whether the subscription obligations were ever binding, and whether there was a bona fide payment and discharge of them, as well as whether the appellants were allowed illegal credits and received bonds belonging to the corporation for their stock, are matters of defense equally available under the original and the amended bill. The amendment simply supplied an omitted averment necessary to give the court jurisdiction—introduced no new cause of action, and therefore related back to the commencement of the suit which was instituted in time. It is true there was a special prayer in the original bill, which was not stricken out. But if it was inappropriate, and if com-

plainants had been entitled to relief under the original bill upon the facts averred, that relief could have been granted under the general prayer. So under the amended bill the relief may be granted under the general prayer. —*Rick v. Eiseman,* 122 Ala. 343, 25 South. 214; *Mobile L. & I. Co. v. Gass,* 142 Ala. 520, 39 South. 229. As said in the case last cited: "Under a prayer for general relief a party cannot recover a claim distinct from that demanded by the bill." But while the complainant may not be entitled to the relief specifically prayed for, he may under a general prayer obtain any other specific relief consistent with the case made by the bill.—Beach on Modern Equity Practice, § 90. 'If the facts which he states are broad enough to give him relief, it matters not how narrow his prayer may be, if his bill contains a prayer for general relief.'—*Hill v. Beach,* 12 N. J. Eq. 31-35. Even if the special prayers were such that no relief could be granted under them, the court under the general prayer may grant an appropriate relief consistent with the case made by the bill.—*Annin v. Annin,* 24 N. J. Eq. 184." The amendment making Hall a party complainant clearly introduced no new cause of action. He is the holder of the bare legal title of the judgment, which the other complainants, as beneficial owners, are attempting to have paid out of the liabilities of the appellants. His introduction did not work an entire change of parties. It was simply—as the statute authorizes—the addition of a new and indispensable party complainant.—*Pitts v. Powledge,* 56 Ala. 147.

Another ground of demurrer, which seems to be insisted on by one of counsel for appellants, is that it is nowhere averred when the alleged fraudulent transactions took place, and therefore the bill fails to show that complainants' debt existed at the time of such transac-

[Alabama Terminal & Improvement Co. v. Hall & Farley, Trustee, et al. and Hall & Farley, et al. v. Alabama Terminal & Improv't Co.]

tions. Whether complainant's debt was created before or after the transactions asserted, is wholly immaterial. If after, suffice it to say that, in the absence of notice on their part that the corporation had forgiven the appellants their stock subscriptions (which constituted in parts its capital stock), they had the right to assume either that the corporation had collected the subscriptions, and therefore had the money, or that it had not impaired by an illegal transaction its right to enforce their collection.—*Lea v. Iron Belt Mercantile Co.*, 147 Ala. 421, 42 South. 415. But, if this be not true, under the averments of the amended bill as to these appellants, the transaction being infected with actual fraud, whether directed against existing or subsequent creditors, either can successfully impeach it.—*Yeend v. Weeks*, 104 Ala. 331, 16 South. 165, 53 Am. St. Rep. 50; *Scals v. Robinson*, 75 Ala. 363.

Our conclusion, therefore, is that the chancellor properly overruled the demurrer to the bill as amended.

Affirmed.

This brings us to a consideration of the cross-appeal, prosecuted by the complainants, to reverse the decree dismissing their amended bill as to the respondents O. C. Wiley and Wiley & Murphree, and disallowing an amendment expressly waiving and striking out all claims in and by virtue of the assignments made to them of the written promises of these respondents. By the original bill it was charged that the respondents were subscribers to the stock of the insolvent debtor corporation and had given their promissory notes therefor, which had never been paid. It further charged a fraudulent scheme, between these respondents and one Saportas, to defraud the corporation and its creditors by attempting to relieve the respondents of their liability upon their notes. Fail-

ing to connect the corporation with the scheme, this court held, on first appeal, that the bill was simply one to collect the notes. The amended bill connected the debtor corporation with the scheme, and showed in legal effect, a gift of the notes to the respondents—a forgiveness of the liability upon them by the debtor corporation—and that the notes had been assigned to the complainants as collateral security by the debtor corporation, of which they had been dispossessed by a fraud.

On the last appeal is was held that complainants may acquiesce in the debtor's fraudulent act of dispossession, waive their lien on the notes under their assignment to them as collateral, treat them as the unincumbered property of the debtor corporation, and as such pursue them into the hands of a fraudulent transferee or assignee of his debtor. It was also said that "it may be the bill is without equity in so far as it seeks to recover on the written promises assigned by the Alabama Terminal & Improvement Company to the complainants as collateral security, counting upon assignments, and that it should be dismissed as to the obligors in those undertakings, Wiley and Clarence Murphree, upon their proper and separate motions." This was upon the ground that complainants had an adequate remedy at law by action upon the notes. It will be observed that the original bill sought to condemn and subject the liability of these respondents as debts due to the corporation, treating the notes as the unincumbered property of the corporation. The amended bill seeks also to condemn and subject the same liability to the satisfaction of complainant's debt, but as being the property of complainants by virtue of the transfer or assignment to them of the notes. The rejected amendment, as we have said, simply waived all claim by virtue of the assignment or transfer, going back

in this respect to the original bill. The amendment should not have been rejected. It was entirely proper, and was not a departure.—*Seals v. Pheiffer,* 81 Ala. 518, 1 South. 267; *Leham v. Clark,* 85 Ala. 109, 4 South. 651.

The question whether the judgment discharging the respondents as garnishees upon their answers in the garnishment proceeding is res adjudicata is not presented by this record. The chancellor held the plea insufficient, and of this the complainants cannot complain.

Reversed and remanded.

HARALSON and DENSON, JJ., concur.

SIMPSON, J. (concurring specially).—Lest there may be some misapprehension as to the concurrence in the foregoing opinion, I desire to say that I do not concur in the criticism of the case of *Nelson v. First National Bank of Montgomery;* my opinion being that that case is a valuable contribution to the law on this vexed question, fixing definite rules which should be adhered to. My concurrence is simply upon the ground that the gravamen of this action, as at first instituted, was the claim that the stockholders had not really paid the amount agreed to be paid by their subscription, and the amendments complained of assert the same claim and pray the same relief.